UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-278-KSF

NORMAN DAVID SOMERVILLE                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

MARVIN S. PITT, ET AL.                                                     DEFENDANTS

Norman David Somerville, who lists his address as 2889 Brookpark Circle, Grove City, Ohio, 43123, has filed a *pro se* civil rights action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Somerville has paid the $350.00 filing fee [Record No. 2]. Accordingly, this matter is before the Court for consideration under the authority of *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *Apple v. Glenn* authorizes a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). *Sua sponte* dismissal is also appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple v. Glenn*, 183 F.3d at 480. Under these circumstances, amendment to cure such defects would not be permitted.

## CLAIMS ASSERTED AND RELIEF SOUGHT

Somerville states that he files this *Bivens* action as a non-prisoner. According to the Federal Bureau of Prisons' ("BOP") website, www.bop.gov, Somerville was released from federal custody on August 10, 2009.[1]

Somerville's claims arose while he was in the custody of the Federal Bureau of Prisons, specifically, the Federal Medical Center ("FMC") located in Lexington, Kentucky. Officials at FMC-Lexington denied Somerville a 180-day pre-release placement in a Residential Re-entry Community ("RRC") located in North Carolina. The denial was the result of re-evaluating Somerville's eligibility for pre-release under the guidelines of the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 ("the SCA").

In his *Bivens* Complaint, Somerville alleges that the decision violated his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution. He further alleges he was denied RRC placement in retaliation for having written a letter to former President George W. Bush. Thus, he claims that the defendants violated his right to freedom of speech guaranteed by the First Amendment of the United States Constitution. Somerville further claims that by denying him RRC placement in North Carolina, the defendants infringed on his First Amendment right to associate with Donald Sullivan, who

---

[1]

In August of 2004, Somerville pleaded guilty to violating 18 U.S.C. § 922(o)(1) "Possession of a Machine Gun," in the United States District Court for the Western District of Michigan. *See United States of America v. Norman David Somerville*, 1:03-CR-239-01(Hon. Gordon J. Quist, presiding). On March 25, 2005,Somerville was sentenced to an 80-month term of imprisonment. The conviction and sentence were affirmed on appeal. Somerville's requests for post-judgment relief were denied.

resides in North Carolina.

Somerville seeks $150,000.00 in compensatory damages from the defendants, jointly and severally; a Declaratory Judgment stating that membership in the Michigan Militia is protected by the First and Second Amendments of the United States Constitution; and attorneys fees (although he is proceeding *pro se*), court costs and expenses.

For the reasons set forth below, Somerville's *Bivens* complaint will be dismissed with prejudice because his claims are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit and no longer open to discussion." *Apple*, 183 F.3d at 479.

<u>NAMED DEFENDANTS</u>

Somerville names the following defendants: (1) Marvin S. Pitt, Housing Unit Manager at FMC-Lexington; (2) Beverly Hoskins, Case Manager at FMC-Lexington; (3) Shamahl Jennings, Counselor at FMC-Lexington; and (4) Stephen Dewalt, former Warden of FMC-Lexington. Somerville sues the defendants in both their individual and official capacities.

<u>SUMMARY OF RELEVANT FACTS</u>

The following is a summary of the allegations contained in Somerville's Complaint and other official sources of which the Court takes judicial notice.

1. <u>Denial of RRC Placement by FMC-Lexington Officials</u>

In May of 2008, over a year prior to his release date, FMC-Lexington officials informed Somerville that he would be recommended for a 180-day pre-release placement in a

Residential Re-entry Community ("RRC") located in North Carolina.[2]

In November of 2008, Marvin Pitt, Somerville's Unit Team Manager at FMC-Lexington, re-evaluated Somerville's eligibility for pre-release under the criteria of the SCA. The SCA, enacted on April 9, 2008, amended 18 U.S.C. § 3624(c) to "authorize[] the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment." *See Montes v. Sanders*, 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008).

Pitt noted that Somerville's Pre-Sentence Investigation Report revealed a criminal history consisting of possession of firearms and ammunition; involvement with the Michigan Militia; and reported hatred of the government. Pitt concluded this history rendered Somerville a "high risk" inmate who should be placed in a Comprehensive Sanction Center ("CSC"), which is designed to meet the needs of higher risk pre-release inmates. Pitt recommended placement in a CSC located in Michigan, not an RRC located in North Carolina [Record No. 2-5, p. 2].

On January 8, 2009, Warden Dewalt upheld Pitt's recommendation [Record No. 5, p.5]. Applying the criteria of the newly enacted SCA, Warden Dewalt determined that RRC placement in North Carolina was not appropriate for Somerville in light of his criminal history, his federal conviction for "Possession of a Machine Gun," his history of access to large amounts of automatic weapons and 1000 rounds of ammunition, and his prior involvement with the Michigan Militia. Warden Dewalt stated that the FMC-Lexington Unit

---

[2]
"RRCs" were previously known as Community Corrections Centers ("CCC's")."

4

Team had contacted the United States Probation Office in the Western District of Michigan to investigate Somerville's claim that he would be in physical jeopardy from Michigan Militia members if he returned to Michigan. According to Warden Dewalt, Somerville's claim was unsubstantiated.

Warden Dewalt determined that Somerville's placement in a more restrictive CSC located in Michigan was warranted for the protection of the public. The warden's decision was subsequently affirmed by the two higher administrative levels of the BOP.

2. The § 2241 Petition
A. Claims Asserted

On February 27, 2009, Somerville filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this Court. *See Norman David Somerville v. Stephen M. Dewalt et al.*, Lexington Civil Action No. 5:09-CV-68 (Hon. Karen K. Caldwell, presiding) ("the § 2241 Petition"). Summarized, Somerville argued in the § 2241 Petition that by denying him placement in an unrestricted RRC in North Carolina, Warden Dewalt violated the Ex Post Facto Clause of the United States Constitution, Art. I, § 10, cl.1.

Somerville argued that although he was sentenced in 2005, the prison staff improperly applied the provisions of the SCA to him. Somerville further argued that he should have been excused from pursuing the administrative exhaustion process because it would have been futile. Finally, Somerville sought an emergency Order from this Court which would have directed the BOP to immediately place him in the North Carolina RRC.

B. Dismissal of the § 2241 Petition

On March 11, 2009, the Court entered a Memorandum Opinion and Order ("the §

5

2241 Opinion and Order") dismissing the § 2241 Petition for Somerville's failure to completely administratively exhaust his claims. [*See* Mem. Op. & Ord 5:09–CV-68-KKC, Record No.6, pp. 6-8].[3] Additionally, the Court denied Somerville's request for emergency injunctive relief, finding that his claim failed to satisfy any of the four criteria used by district courts in determining whether to invoke emergency injunctive relief measures [*Id*., pp. 8-15].

In particular, the Court concluded Warden Dewalt properly considered Somerville's RRC eligibility under the SCA criteria and that the action did not violate the Ex Post Facto Clause. The Court also noted that although the RRC placement issue remained to be addressed by higher BOP administrative levels, Warden Dewalt's stated reasons for denying Somerville RRC placement appeared to be sound and to comply with the criteria set forth in the SCA

On the issue of emergency injunctive relief, the Court determined that Somerville's likelihood of success of the merits was almost non-existent. The Court explained that: (1) the SCA is more favorable for RRC placement than prior BOP regulations had been, (2) the SCA does not mandate a federal inmate's placement in an RRC, but instead only requires the BOP to consider an inmate for RRC placement, and (3) even if pre-release placement is authorized, it is for no specific period of time, such as 180-days [*Id*., pp. 8-11].

Citing numerous cases, the Court further noted that the BOP enjoys complete discretion as to prisoner incarceration and classification issues, and that prisoners have no

---

[3]

The Court noted that although Warden Dewalt had denied Somerville's BP-9 "Request for Administrative Remedy No.520816"on January 8, 2009, the issue would have to be appealed to the BOP Regional Director and BOP Central Office.

6

inherent constitutional right to placement in any particular prison (such as an RRC), security classification, or housing assignments [*Id*., pp. 10-14]. Finally, the Court explained that any constitutional claims for damages had to be asserted in a separate *Bivens* action [*Id*., pp. 15-18].

Somerville sought reconsideration of the § 2241 Opinion and Order. On May 1, 2009, the Court denied the motion [*See* 5:09-CV-68-KKC, Order, Record No. 9].

3. <u>Administrative Exhaustion Activity</u>
A. <u>Administrative Remedy No. 520816</u>

As noted, when Somerville filed the § 2241 Petition, he had begun the administrative remedy process by filing Administrative Remedy No. 520816, which Warden Dewalt denied on January 8, 2009 [Record No. 2-5, p.5]. In that remedy, Somerville had requested that the decision to deny him RRC placement in North Carolina and to place him instead in a Michigan CSC, be rescinded. As explained in the § 2241 Opinion and Order, Somerville had not completed the administrative exhaustion process at that time.

On February 20, 2009, BOP Regional Director K. M. White denied Somerville's BP-10 appeal of the denial of Administrative Remedy No. 520816, finding that the Unit Team had properly applied the five factors set forth in the SCA to Somerville's request [*Id*., p.8]. Regional Director White stated that based on the nature and circumstances of Somerville's offense, and based upon Somerville's own history and characteristics, he was not an appropriate candidate for RRC placement [*Id*]. On May 7, 2009, Harrell Watts, the Administrator of the BOP's National Inmate Appeals, upheld Regional Director White's decision [*Id*., p. 12].

7

B. <u>Administrative Remedy No. 520894</u>

On February 23, 2009, just days before Somerville filed the § 2241 Petition, he filed another Request for Administrative Remedy with Warden Dewalt, this one identified as Administrative Remedy No. 528094 [Record No. 2-4, p.3]. In that remedy request, Somerville  again challenged Marvin Pitt's decision to deny him RRC placement in North Carolina [Record No. 2-4, p. 3].  Somerville asked Warden Dewalt to identify upon which additional information Marvin Pitt had relied when re-evaluating his eligibility for RRC placement under the SCA [*Id*.].

On March 11, 2009, Warden Dewalt denied Administrative Remedy No. 528094. He responded that the United States Probation Office in the Western District of Michigan had informed FMC-Lexington officials of Somerville's involvement with the Michigan Militia and of Somerville's "continued" threats to government officials [Record No. 2-4, p.4].

> Specifically, you made threats to the USPO in the Western District of Michigan prior to your incarceration and recently forwarded a letter with an implied threat to the Former president of the United States.  Consequently, it is believed your placement in a RRC is inappropriate due to the serious nature of your offense conduct and your continued implied threats, which demonstrates a need for increased public safety.

[*See* Dewalt response, *Id*].

Next, Warden Dewalt explained that Somerville's release plan, whereby he was to be employed as a paralegal in North Carolina, was neither verifiable nor feasible. Finally, the warden stated that the Western District of Michigan USPO had been contacted to investigate Somerville's claim that he would have been in physical jeopardy if he had returned to Michigan. The USPO found no evidence to substantiate Somerville's allegation [*Id*.].

8

Somerville appealed to the BOP Mid-Atlantic Regional Office, alleging that FMC-Lexington officials had wrongly denied him RRC placement in North Carolina and had unfairly disregarded, as unsubstantiated, his proposed employment as a paralegal there [*Id*., pp. 6-7]. He further claimed that FMC-Lexington officials had retaliated against his right to freely express himself by writing a letter critical of former president George W. Bush [*Id*., p.7]. Somerville argued that if his letter had contained either an express or an implied threat of any kind, he would have been charged with a BOP disciplinary violation, which he was not [*Id*., p.7].[4]

On March 19, 2009, Regional Director K. M. White denied Somerville's BP-10 appeal of the denial of Administrative Remedy No. 528094 [*Id*., p. 28].  White stated that the issue of relocation had already been addressed and denied in Warden Dewalt's response to Administrative Remedy No. 520816 [*Id*.]. Somerville then appealed to the Central Office

---

[4]

The letter which Somerville wrote to former President George W. Bush is dated January 8, 2009 [*See* Record No. 2-7, pp. 7-9]. The letter reads as follows:

Dear Mr. Bush,

The Editors at AMERICAN FREE PRESS feel that you need some reminders of how much Americans as well as Iraqis hate you for your vile lies and evil "war" in Iraq. So please find a pair of shoes on the reverse to add my sympathy to Mantadar Arzaidi.*

> May you rot in hell,
> David Somerville

Which one of you Israeli mouse-kateers sabotaged Mike Connell's plane?

My money is on Vincent Bugliosi. I say you're going down for MURDER real soon. Real soon.

[*Id*].* The attachment is an outline of a pair of men's shoes.

9

[*Id*., p. 29]. Presumably the Central Office denied that appeal as well, although the denial of the BP-11 is not attached as an exhibit to his Complaint.

### C. Administrative Remedy No. 535198

On March 30, 2009, three weeks after the Court dismissed the § 2241 Petition, Somerville filed yet another a BP-9 "Request for Administrative Remedy" with Warden Dewalt [Record No. 2-6, p.4]. This time, Somerville requested a copy of the letter which he had written to former President George W. Bush, and demanded to know what specific language in the letter was considered as an implied threat [*Id*.]. Somerville demanded monetary damages under the First Amendment, claiming that he enjoyed the right to express his beliefs by writing that letter [*Id*.].

On April 30, 2009, Warden Dewalt denied Somerville's demand for monetary damages and informed Somerville that such a request must be submitted through a request pursuant to the BOP through the Freedom of Information Act [*Id*., p. 5]. On July 23, 2009, Regional Director White affirmed Warden Dewalt's disposition of the request and denied Somerville's BP-10 appeal [*Id*., p. 14]. Presumably the Central Office denied that appeal, although the denial of the BP-11 is not attached to the Complaint.

### D. Administrative Remedy No. 546870

On June 24, 2009, Somerville filed a BP-8 "Informal Resolution Form" to the staff at FMC-Lexington, demanding to know what specifically they considered to be "threatening" about his January 8, 2009 letter to Former President George W. Bush [Record No. 2-7, p.1]. Somerville alleged that Warden Dewalt had failed or refused to answer that question on June

22, 2009 [See Warden's Response, 6/22/09, *Id*., p.2]. In that Response, Warden Dewalt had stated that he had previously addressed the issue in his April 30, 2009 response to Administrative Remedy No. 535198 [*Id*., p. 2]. Somerville then filed a BP-9 "Request for Administrative Remedy" with the Warden of FMC-Lexington [*Id*., pp. 12-13].

On July 24, 2009, Deborah Hickey, the new Warden of FMC-Lexington, denied Somerville's BP-9 appeal   [*Id*., p. 14].  Hickey explained that both the contents of Somerville's letter to former President Bush, and the overall tone of the letter, conveyed an implied threat. Warden Hickey further noted that the contents of the letter had been sufficiently serious to prompt an investigation by Secret Service officials [*Id*]. [5]

Hickey noted that the responses to Somerville's previously filed Administrative Remedy No. 528094 explained why RRC placement was deemed inappropriate for Somerville. Hickey again reiterated the reasons: the serious nature of Somerville's offenses and threats made to government officials (individuals in the United States Attorney's Office, the United States Probation Office, and the judge who presided over Somerville's criminal trial) [*Id*].

---

[5]

    Somerville submitted an April 24, 2009  "Memorandum for Central File" prepared by Marvin Pitt, Unit Manger [Record No. 2-7, pp. 10-11]. Pitt enumerated the reasons why Somerville was denied RRC placement in North Carolina under the five factors of the SCA. Pitt reiterated Somerville's criminal history of gun and ammunition possession (machine guns and a thousand round of ammunition); his anti-government sentiments and statements about a "New World Order"; his disdain of the United States Attorney's office; and his association with anti-government militia-men. Pitt described Donald Sullivan, Somerville's purported employer in North Carolina, as  "anti-government." [*Id*.].

The record contains no other information relative to further exhaustion efforts as to this administrative remedy. Somerville was released from federal custody on August 10, 2009.

### 4. Claims Asserted in *Bivens* Complaint

Somerville alleges that by denying him placement in a "far less restrictive environment at a half way house" for the last six months of his term of imprisonment, the defendants caused him to lose a job where he had been guaranteed a position and an opportunity "to be relocated to a safe place to live." [Record No. 2, p.3]. He further alleges that the federal defendants' actions in denying him a six month placement in a North Carolina RRC/half-way house have caused him to suffer substantial mental and emotional distress [*Id*.].

### DISCUSSION
### 1. Fifth Amendment Due Process Claim

Somerville alleges that the defendants denied him due process of law, in violation of the Fifth Amendment of the United States Constitution, because they applied the SCA to him when revoking an earlier recommendation for possible RRC placement.  As discussed, the SCA amended 18 U.S.C. § 3624(c)(1), which now provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions **may** include a community correctional facility.

(Emphasis added).  The BOP is to utilize the five factors set forth in 18 U.S.C. § 3621(b) to

make such determinations. That statute provides, in relevant part:

> (b) Place of imprisonment.-The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>> (1) the resources of the facility contemplated;
>> (2) the nature and circumstances of the offense;
>> (3) the history and characteristics of the prisoner;
>> (4) any statement by the court that imposed the sentence-
>>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>> (B) recommending a type of penal or correctional facility as appropriate; and
>> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

[*Id*.]

As the Court explained to Somerville on March 11, 2009, when it denied Somerville's request for preliminary injunction and dismissed the § 2241 Petition, there is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence.  *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or state law. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864 (1983); *Asquith v. Department of Corrections*, 186 F.3d 407, 409 (3rd Cir.1999). With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon

13

him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543 (1976) (quoted in *Hewitt*, 459 U.S. at 468, and *Sandin v. Conner*, 515 U.S. 472, 480, 115 S.Ct. 2293 (1995)).

The BOP clearly enjoys discretion, within the statutory guidelines, to choose a period of time of less than 12 months, or indeed no period of time at all, for the reentry adjustment phase. Under the statute, the BOP also has discretion to choose the appropriate "conditions" that will afford a reasonable opportunity for the adjustment and reentry of the prisoner into the community; this "may" include a community correctional facility (*i.e.*, halfway house) but release to the custody of such a facility is not mandated. *O'Hara v. Rios*, Slip Copy, 2009 WL 3164724 (D. Minn.). The plain meaning of § 3624(c) is that the period of confinement in a community correctional facility must not exceed 12 months, not that it must be 12 months, or six months.

In sum, an inmate is entitled to a good faith and proper exercise of discretion by the BOP. *Rodriguez v. Smith*, 2007 WL 628663 (E. D. Cal. Feb.28, 2007), *aff'd* 541 F.3d 1880, 1887 (9th Cir.2008). Although Somerville may have believed that an RRC placement in the state of his choosing would have benefitted him, a petitioner "is not entitled to a writ of habeas corpus simply because he thinks the Bureau of Prisons misjudged his situation and made a bad decision about when he should be transferred to an RRC." *Segovia-Reyna v. Cruz*, 2009 WL 279482 (D. Minn.2009); *Daraio v. Lappin*, 2009 WL 303995, *6-7  (D. Conn., February 9, 2009) (Slip Copy), (prisoner presented no arguable legal basis for

disturbing the BOP's discretionary determination following its consideration of the statutory

factors of the SCA); *Bruce v. Apker*,  Slip Copy, 2009 WL 2509170 (D. Ariz. August 17,

2009) (the SCA only provides that the BOP consider an inmate for RRC placement, not that

the inmate actually get such placement); *Roman v. Berkebile*, 2008 WL 4559825 at *2 n. 2

(N. D. Tex. Oct.6, 2008) (prisoners may receive a maximum of 12 months under the SCA,

but there is no presumptive minimum).

        This same rationale, on which the Court relied in declining to interfere with the BOP

in the § 2241 Petition, bars the almost identical *Bivens* claims that Somerville re-hashes in his

current *Bivens* Complaint seeking $500,000.00 in damages.  Given the BOP's well

documented and comprehensive explanations for reconsidering Somerville's eligibility for

RRC placement in November of 2008, all of which were provided during the exhaustion

process,  it is almost certainly likely that this Court would have denied Somerville a writ of

habeas corpus on the merits of his § 2241 petition after administratively exhausting his

claims. [6]

        By analogy this result is consistent with theory set forth in *Heck v. Humphrey*, 512

U.S. 477, 114 S.Ct. 2364, 129 L. Ed.2d 383 (1994). In *Heck*, the Supreme Court established

the so-called "favorable termination rule." The Court explained that rule as follows:

> [T]o recover damages for an allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by

---

[6]

        As discussed, the Court declined to order injunctive relief in the § 2241 Petition before the
administrative remedy process had run its course.

executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id*. at 486-87.

The *Heck* rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction." *See id*. at 484-485.

Here, the decisions to revoke Somerville's potential RRC placement, made by Unit Manager Marvin Pitts, Former Warden Stephen Dewalt and Warden Deborah Hickey, were documented, substantiated and were within their discretionary authority to make. Both Pitt and Dewalt applied the criteria of § 3621(b) to Somerville, finding that his particular criminal offenses, criminal history and affiliations with anti-government groups rendered him an unfit candidate for RRC placement. It would be completely inconsistent to consider awarding Somerville monetary damages for the defendants' refusal to allow Somerville RRC placement in the state of his choosing when such a decision would have been upheld had the issue come before the Court via a fully exhausted § 2241 petition.

Somerville next claims that the denial of RRC placement in North Carolina caused him irreparable harm, in the form of six months of lost job experience and resulting mental distress. Somerville claims that an individual named Donald Sullivan had offered him a 3-year position as a paralegal in North Carolina. Warden Dewalt concluded that based on what Somerville had submitted for review, the purported "release plan" was neither feasible nor verifiable.

16

Somerville attached to his Complaint a copy of a letter which Mr. Sullivan allegedly wrote to Marvin Pitt and Beverly Hoskins on February 24, 2009 [Record No.2-4, p. 14-15]. Sullivan expressed his desire to hire Somerville as a paralegal.  Interestingly, Sullivan's letter was not presented on the letterhead of an attorney, law firm, corporation, partnership, LLC, non-profit or other legitimate organization. Sullivan did not even identify himself as an attorney. He described the nature of his "business" in only very broad and vague terms, stating as follows:

(1)     "I am retired from the Air Force and am totally self-supporting;" [¶ 1].

(2)     " . . . I immediately responded with my offer to accept him [Somerville] as my assistant to help me in the area of legal affairs. . ." [¶ 5].

(3)     "The building I plan to use to house the paralegal operation is located at 101 E. Church Street in Atkinson, N.C. It is a two-story, brick building with the upstairs converted into living quarters (for one) and office space. The down stairs is intended only for storage at the present time. Sufficient electrical, phone, water, sewer and other utilities will be provided to meet the needs of Mr. Somerville as well as the requirements of your offices." [¶ 6].

(4)     "Mr. Somerville will, in fact, be working as my personal assistant at the office. There is no business, per se, but we will offer legal assistance, not advice, to those in need and expect only donations in return. It will be a strictly non-profit operation. I have no plans for any other employees at this office." [¶ 7].

[*Id.*].

These descriptions do not indicate the existence of a legal office or other legitimate organization where a paralegal would be employed to assist a licensed attorney.  Sullivan described only in general terms a "para-legal operation," based out of a building with living

17

quarters and storage. Sullivan did not specify either the name of the entity or the type of "legal assistance" to be provided. Sullivan did state that it would be a non-profit operation, but provided no specific information as to his tax exempt status as a non-profit organization.

Next, Warden Dewalt explained that the United States Probation Office in the Western District of Michigan had confirmed to FMC-Lexington officials that Somerville had a history of having made a series of threats to government officials. As if that were insufficient, Somerville wrote a derogatory letter to former President George W. Bush in January of this year, stating that he hoped the former president would rot in hell, and anticipated that the former president would "go down for 'MURDER'." By his express statement and by attaching the outline of a pair of shoes, Somerville conveyed sympathy for the Iraqi citizen who had recently thrown his shoe at President Bush as a sign of disrespect and criticism.

As Warden Hickey correctly pointed out, the overall tone of the letter was so disturbing that the Secret Service was asked to investigate the letter. Somerville argues, unpersuasively, that the Secret Service declined to take any action against him. Given Somerville's criminal history, however, the fact that the Secret Service opted not to press charges is hardly an endorsement of the letter. The tone of the letter would have caused any reasonable prison official to take note and be concerned when evaluating Somerville's candidacy for RRC placement.

These considerations justify the defendants' decision to deny Somerville RRC placement. Somerville has therefore asserted no actionable due process claim stemming from

18

the decision.

2. <u>First Amendment Retaliation and Expressive Association Claim</u>

Somerville next contends that the decision to deny him RRC placement in North Carolina was made in retaliation for the fact that he wrote the January 8, 2009 letter to former President George W. Bush. Somerville further argues that the decision to deny him RRC placement in North Carolina infringed on his First Amendment right to engage in expressive association with Donald Sullivan. Neither of these claims have merit.

To state a claim for First Amendment retaliation, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that  would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between his protected conduct and the adverse action - "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

First, while prisoners enjoy a constitutional right to take certain actions, such as filing grievances against correctional employees, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), and filing civil rights claims,  prisoners have no inherent constitutional right to placement in any particular prison (such as an RRC), security classification, or housing assignment, even though the degree of confinement in one facility may be quite different from that in another. *See Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L. Ed.2d 174 (2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238,

19

245, 103 S.Ct. 1741 (1983);  *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976).

Congress has given federal prison officials full discretion to control matters of housing, classification and eligibility for rehabilitative programming.  *See Walker v. Hughes*, 558 F.2d 1247, 1252 (6th Cir.1977) ("Federal statutory law gives ... prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons ....").

Thus, a federal prisoner has no legitimate statutory or constitutional entitlement as to such issues sufficient to invoke due process. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L. Ed.2d 236 (1976). The denial of RRC placement for reasons related to legitimate penological interests is a matter within the discretion of BOP authorities.  *See Asquith v. Department of Corrections*, 186 F.3d 407, 409 (3d Cir.1999) (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

Second, denying an inmate RRC placement would not deter a person of ordinary firmness from exercising his First Amendment rights. In *Smith v. Yarrow*, 78 Fed. Appx. 529 (6th Cir.2003), a panel of the Sixth Circuit stated, in an unpublished decision, that "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment

rights." *Id*. at 543 (internal quotation marks omitted). A number of unpublished decisions, both before and since *Smith*, support this proposition. *See*, e.g., *King v. Zamiara*, 150 Fed. Appx. 485, 494 (6th Cir.2005); *Jewell v. Leroux*, 20 Fed. Appx. 375, 378 (6th Cir.2001); *Friedmann v. Corr. Corp. of Am*., 11 Fed. Appx. 467, 469-71 (6th Cir.2001).

The Sixth Circuit has distinguished *Smith* on the ground that the transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts. *See Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005). Somerville has alleged no such foreseeable consequences and it is clear that he has thus far not been deterred from seeking judicial relief. Moreover, this Court has held that in the context of a First Amendment retaliation claim, a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility. *Siggers-El*, 412 F.3d at 701; *Thaddeus-X*, 175 F.3d at 398; *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir.1995).

Thus, absent aggravating circumstances of the type present in *Siggers-El*, Somerville's complaints pertaining to his denied placement in an RRC fail to allege "adverse action" that would deter a person of ordinary firmness from engaging in constitutionally protected conduct.

Accordingly, to the extent Somerville asserts derivative claims seeking compensation for lost income and lost "job experience" resulting from the denial of an RRC placement in North Carolina, Somerville fails to state a claim upon which relief can be granted.

Third, to the extent that Somerville alleges that he has suffered emotional distress for a housing decision made while he was a prisoner in federal custody, he states no claim. Somerville was an inmate when he was denied RRC placement. An inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e).  *See Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *and Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). No physical injury has been established here.

Finally, Somerville's First Amendment claim that while he was in federal custody he was denied the right to associate with Donald Sullivan, must be dismissed.  Again, Somerville had no constitutionally protected right to RRC placement from the outset, much less to an RRC placement in the state of his choosing and working for a purported employer of his choosing.

Somerville was under the authority of the BOP until the day of his release. Somerville postures his claim on this issue as if he had been a citizen at liberty to associate with whom he chose at the relevant time. He appears to ignore the fact that he was in custody at the time the defendants evaluated the validity and feasibility of his North Carolina pre-release proposal.

A prisoner's right to associate is not unfettered. Prison officials may limit a prisoner First Amendment rights if their actions are reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir.1994) (per curiam).

22

"Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. **The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution**. Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates."

*Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 132 (1977).

In a more recent case, the United States Supreme Court cited the *Jones* case when it addressed the issue of restrictions on inmate privileges. The Court explained as follows:

The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). **And, as our cases have established, freedom of association is among the rights least compatible with incarceration**. *See Jones*, *supra*, at 125-126; *Hewitt v. Helms*, 459 U.S. 460 (1983). Some curtailment of that freedom must be expected in the prison context."

*Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167 (2003).

The BOP had the authority and the discretion to carefully scrutinize Somerville's RRC proposed release plan to ensure that it was legitimate, verifiable and feasible. The defendants' decision to deny RRC placement on the terms which Somerville preferred did not violate his right to associate with Donald Sullivan while he was in the custody of the BOP.

<u>SUMMARY</u>

For the reasons set forth in this Memorandum Opinion and Order, Somerville's First Amendment freedom of speech and association claims, and his Fifth Amendment due process claims, lack any arguable basis in law. *See Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct.

23

1827, 104 L. Ed.2d 338 (1989); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.2001). The dismissal criteria set forth in *Apple v. Glenn* is satisfied, because Somerville's claims are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit and no longer open to discussion." *Apple*, 183 F.3d at 479. *See Brammell v. Whipple*, 2009 WL 649164 (E.D. Ky.) (dismissal of complaint under *Apple v. Glenn* where plaintiff's petition was clearly barred by the doctrine of claim preclusion). The claims will be dismissed with prejudice.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     This action is **DISMISSED WITH PREJUDICE**, *sua sponte,* from the Court's active docket.

(5)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This October 29, 2009.



**Signed By:**

**<u>Karl S. Forester</u>**  *K S F*

**United States Senior Judge**

24